UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATHWAY INNOVATIONS AND TECHNOLOGY INC.,<br><br>Plaintiff,<br><br>v.<br><br>XPO LOGISTICS FREIGHT, INC.,<br><br>Defendant. | Case No.: 18cv2385-JAH (MDD)<br><br>**ORDER GRANTING MOTION TO SET ASIDE DEFAULT (Doc. No. 7) AND DENYING MOTION FOR DEFAULT JUDGMENT (Doc. No. 9)** |

## **INTRODUCTION**

Pending before the Court are Defendant XPO Logistics Freight, Inc.'s ("Defendant") motion to set aside default and Plaintiff Pathway Innovations and Technology, Inc.'s ("Plaintiff") motion for default judgment. See Doc. Nos. 7, 9. The motions are fully briefed. Plaintiff filed a response in opposition to Defendant's motion to set aside default, and Defendant filed a response in opposition to Plaintiff's motion for default judgment. See Doc. Nos. 11, 12. After careful review of the pleadings submitted by both parties, and for the reasons set forth below, Defendant's motion to set aside default (Doc. No. 7) is **GRANTED**, and Plaintiff's motion for default judgment (Doc. No. 9) is **DENIED**.

//

//

1

# BACKGROUND

Defendant is a licensed motor carrier that had a business relationship with Plaintiff. Doc. No. 7-1 at pg. 3. Plaintiff alleges that Defendant is responsible for two shipments containing electronic goods that were either lost, missing, or damaged. Id.

On October 17, 2018, Plaintiff filed the complaint in the instant action. See Doc. No. 1. Defendant's registered corporate agent was served in Sacramento, California on October 23, 2018. Doc. No. 7-1 at pg. 3. Defendant's registered corporate agent, following XPO's internal procedures, intended to forward the complaint to Michael Hintzel, a "less-than-truckload cargo" claims manager in Texas. Id. Hintzel, also following XPO's internal procedures, forwarded the complaint to J. Allen Jones, III, Defendant's in-house transportation counsel located in Dublin, Ohio, along with several other recipients. However, Hintzel failed to include Jones's email address in the email, and Jones did not receive the email in timely fashion. Id. Defendant claims this error was due to "simple mistake" as Jones was still addressed in the body of the email. Id.

Defendant claims that it did not receive Plaintiff's request for entry of default until on or about December 28, 2018. Id. Defendant forwarded the request to Jones on the same day. Id. at pgs. 3-4. At this time, after a brief investigation, Defendant discovered the earlier mistake of not sending the complaint to Jones. Id. at pg. 4. Defendant asserts that sometime between December 28, 2018 and December 31, 2018, Defendant's attorney contacted Plaintiff's counsel by phone requesting the default be set aside. Id. Plaintiff's counsel denied this request. Id.

# DISCUSSION

I. **Legal Standard**

   a. **Set Aside Default**

The Federal Rules provide that a "court may set aside an entry of default for good cause . . . [.]" Fed. R. Civ. P. 55(c). To determine "good cause", a court must "consider [ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether

reopening the default judgment would prejudice" the other party. *See Franchise Holding II v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 925-26 (9th Cir. 2004). This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default. *See id.* Crucially, however, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984); *see also Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006); *Speiser, Krause & Madole P.C. v. Ortiz,* 271 F.3d 884, 890 (9th Cir. 2001); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695–96 (9th Cir. 2001).

### b. Default Judgment

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Clerk of Court may enter default judgment if the amount sought is "for a sum certain or a sum that can be made certain by computation." FED.R.CIV.P. 55(b)(1). In all other cases, the application must be made to the court. FED.R.CIV.P. 55(b)(2).

The Ninth Circuit has articulated the following factors for courts to consider in determining whether to grant default judgment: (1) the substantive merit of the plaintiff's claims, (2) the sufficiency of the complaint, (3) the amount of money at stake, (4) the possibility of prejudice to the plaintiff if relief is denied, (5) the possibility of disputes to any material facts in the case, (6) whether default resulted from excusable neglect, and (7) the public policy favoring the resolution of cases on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment; granting or denying relief is within the court's discretion. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). For relief to be granted, the plaintiff is required to state a claim and provide proof of all damages sought in the complaint. See PepsiCo Inc.

v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED.R.CIV.P. 54(c). "The court may conduct hearings or make referrals…when, to enter or effectuate judgment, it needs to: (a) conduct an accounting; (b) determine the amount of damages; (c) establish the truth of any allegation by evidence; or (d) investigate any other matter." FED.R.CIV.P.55(b)(2).

A default judgment on fewer than all defendants must comply with Federal Rule of Civil Procedure 54(b), which states that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order…that adjudicates fewer than…all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED.R.CIV.P. 54(b).

## II. Analysis

### a. Motion to Set Aside Default

#### i. Culpable Conduct

Defendant argues that it never intentionally avoided obligation to respond to the complaint. Doc. No. 7-1 at pg. 6. Defendant contends that it followed its internal procedures for handling complaints to the best of its ability, and failure to respond was a product of "mere oversight" and "clerical error." Id.

Plaintiff argues that Defendant willingly undertook and accepted the risk involved with identifying a non-XPO entity, Registered Agent Solutions, for receiving service of process. Doc. No. 12 at pg. 3. Plaintiff contends that while Jones was not aware of the complaint, XPO's Litigation Department *was* aware of the complaint. Id. at pgs. 3-4.

#### ii. Meritorious Defense

Defendant argues that Plaintiff's state law claims are preempted by the Carmack Amendment to the Interstate Commerce Act and should be dismissed. Doc. No. 7-1 at pgs. 5-9.

Plaintiff argues that Defendant fails to state facts that would constitute a defense. Id. at pg. 4. Plaintiff also argues that Defendant "does not offer a single fact to show that these requirements have been met and that the Carmack Amendment would limit Defendant's liability or serve as a meritorious defense to Plaintiff's claims." Id.

### iii. Potential Prejudice

Defendant argues that Plaintiff will not be prejudiced if the Court sets aside the default because Defendant immediately reached out to Plaintiff once Defendant learned of the entry of default. Doc. No. 7-1 at pg. 5. Defendant contends that simple delay in resolution of the case does not amount to prejudice. Id.

### b. Motion for Default Judgment

In support of its Motion for Default Judgment, Plaintiff submits the declaration of Ji Shen, Chief Executive Officer for Pathway Innovations and Technologies, Inc. Shen testifies to the following facts:

"On or about May 4, 2018, Pathway delivered to XPO Logistics Freight, Inc., five pallets of products to ship from Pathway's San Diego warehouse to a customer of Pathway in Milwaukee, Wisconsin. Four of these pallets were delivered on or about May 9, 2018, but one was not. The missing pallet contained 195 Ultra8 (HCU-800) document cameras and 160 Solo8+ document cameras. The inventory contained in the missing pallet had been sold to Pathway's customer for the total amount of $100,885. A police report has been filed but said pallet has yet to be located. On information and belief, XPO did not locate the missing pallet. XPO did not deliver this pallet of goods to Pathway or its customer. However, Pathway was invoiced $2,055.28 by XPO for the delivery of the five pallets, including the missing pallet that was not delivered to Pathway's client. This invoice is disputed by Pathway and remains outstanding. Pathway was later required to ship a replacement set of the missing inventory to its customer and was compelled to pay shipping charges of $519.68 to XPO (in addition to the costs of the cameras themselves). In addition to these damages, the relationship between Pathway and its customer was damaged. No money or credit has been paid to Pathway by XPO regarding this lost shipment or the goods, and no adequate or full explanation was offered to either Pathway or its customer. On or about June 4, 2018, Pathway delivered to XPO a shipment of 8 pallets containing a total of 37 television panels for delivery from Pathway's San Diego warehouse to Pathway's customer (an elementary school) in Covington, Kentucky. These items were sold to Pathway's customer for the total amount of $59,163. Pathway was informed that the XPO truck was in a single vehicle accident in Walton, Kentucky on June 8, 2018. On information and belief, 2 of the 37 television panels were lost, destroyed and never found,

and 12 of the 37 television panels were severely damaged and unsalvageable. Of the remaining 23 panels that were returned to Pathway and were usable, Pathway re-sold 14 panels for a total price of $6,396, less Pathway's cost for repackaging of approximately $500.00. Pathway also used 4 panels as Replacement Units ("RMA"), which were sent to Pathway's customer. However, Pathway was compelled to incur an additional $200 to repackage said panels. The remaining 5 panels are currently in the Pathway warehouse, which Pathway was compelled to repackage at a cost of approximately $250.00. The total loss for the panels (after accounting for the re-sold items) is $53, 717.00. Subsequently, Pathway was invoiced by XPO in the amount of $2,774.30 for the non-delivery and shipping of the 37 television panels. This invoice remains disputed by Pathway and is outstanding. XPO has not provided a credit or discount for these shipping costs. Pathway later shipped 37 television panels to its customer and was compelled to pay XPO additional shipping charges. In addition to these damages, the relationship between Pathway and its customer was damaged. No money or credit has been paid to Pathway by XPO regarding this shipment or these goods. Pathway has attempted to resolve this matter with XPO. XPO has failed to pay/reimburse Pathway for the abovementioned damages. XPO has not issued a credit or refund of any type for the inventory, including but not limited to the sale price of goods or the shipping costs associated with the initial shipment and/or the replacement shipments. In addition to the damages detailed above, Pathway suffered other damages. The loss of these shipments, items and revenue had substantial effects on Pathway, including but not limited to cash flow and operations. Further, Pathway's relationship with these customers (and others who were affected by the impact on Pathway's business operations) was damaged. Pathway estimates such damages to be $180,000."

See Doc. No. 9-1 at pgs. 1-4.

In response, Defendant makes the same arguments that it made in its Motion to Set Aside Default Judgment. Doc. No. 11-1 at pgs. 3-7. Defendant argues that the claims for damages totaling $341,616.95 is significant, and there is significant dispute over the material facts. Id. at pg. 7. Defendant contends that Plaintiff fails to provide adequate evidence to support its damage calculation. Id. at pg. 8. Defendant asserts that Plaintiff does not provide packing lists, invoices, or proof payment, but rather makes "hearsay statements that the lost inventory was valued at $100,885." Defendant claims that Plaintiff fails to show Defendant engaged in any culpable conduct. Id. at pg. 9. Defendant claims that "an inadvertent clerical error prevented an appropriate pleading to be filed in a timely

fashion." Id. Defendant argues that this case should proceed towards trial so it can be decided on the merits. Id.

The two motions are inextricably linked. Three factors to determine "good cause" in setting aside a default include the following: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would "prejudice" the other party. *See Franchise Holding II,* 375 F.3d at 925-26.

Here, Defendant engaged in negligible conduct by failing to notify their in-house counsel about the complaint. Upon notice Defendant promptly responded to Plaintiff's request for default judgment and appears to have a meritorious defense. Defendant asserts that Plaintiff's claims are preempted and controlled by federal law. Doc. No. 7-1 at pgs. 5-6. Defendant also contends that Plaintiff's claims are subject to dismissal. Id. Defendant appears likely to file a motion to dismiss if the Court sets aside the entry of default, and Plaintiff is aware of this possibility. Doc. No. 12 at pg. 5.

In addition, reopening the default would not prejudice Plaintiff. Plaintiff has not made any arguments about how it would be prejudiced moving forward if the Court grants Defendant's motion to set aside default. Plaintiff simply argues that it has incurred expenses in filing for entry of default and filing an opposition to Defendant's motion to set aside default but makes no mention of future prejudice. Further, Defendant's conduct of leaving out one email address, despite addressing the email to that accidentally omitted party, appears to be a common, unintentional mistake.

In assessing the aforementioned factors in determining whether to set aside a default, the standard is disjunctive, such that a finding that any one of the factors is sufficient reason for the district court to refuse to set aside the default. *See Franchise Holding II,* 375 F.3d at 925-26. Crucially, however, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984); *see also Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006); *Speiser, Krause & Madole P.C. v. Ortiz*, 271

7

18cv2385-JAH (MDD)

F.3d 884, 890 (9th Cir. 2001); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695–96 (9th Cir. 2001). The Court finds the case should be decided on the merits.

## **CONCLUSION**

Based on the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to set aside default (Doc. No. 7) is **GRANTED**. Accordingly, Plaintiff's motion for default judgment (Doc. No. 9) is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 18, 2019

_____
JOHN A. HOUSTON
United States District Judge